**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**MATTHEW T. NORMAN, ESQ., SBN 351413**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: (510) 929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: MNorman@LawyersFTP.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARACELI CARINA AYALA, an individual, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; and DOES 1-50, inclusive. <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR DAMAGES |

## INTRODUCTION

1. In the early summer evening of July 18, 2024, Plaintiff Araceli Ayala and her friend were driving through the Marin Headlands area of Marin County, California, hoping to enjoy the natural beauty and scenic views of the Golden Gate National Recreation Area. Little did Ms. Ayala know, she would soon be attacked, humiliated, and unlawfully arrested by two

zealous National Park Service Law Enforcement Rangers: Nicolette Palmer and her trainee, Chad Alexander. Ms. Ayala was polite, cooperative, and complied with all of the Rangers' commands, yet Ms. Ayala was wrongfully subjected to uses of force and was falsely arrested simply because her name was "Araceli Ayala."

2. Indeed, Ms. Ayala was pulled over because Rangers Palmer and Alexander believed that Ms. Ayala's vehicle registration tags were expired. Ms. Ayala politely explained that her tags were stolen from her vehicle and promptly showed the Rangers official DMV paperwork confirming that her registration was current and paid. But instead of adhering to their legal obligation to let Ms. Ayala leave, Rangers Palmer and Alexander decided to fish for an outstanding warrant for a subject with the same first and last name as Ms. Ayala.

3. Rangers Palmer and Alexander eventually found their warrant, but there was a problem: Ms. Ayala looked different than the subject of the warrant and had a different date of birth, middle name, height, weight, address, and driver's license number. Additionally, the warrant was issued for a suspect in Lancaster, California, nearly four hundred (400) miles away from where the Rangers were detaining Ms. Ayala. Despite these glaring discrepancies, Rangers Palmer and Alexander "confirmed" that Ms. Ayala was the subject of the warrant and placed her under arrest.

4. Ms. Ayala fully complied with all of Ranger Palmer's and Ranger Alexander's commands, but that did not prevent Ms. Ayala from being injured. Ranger Alexander put Ms. Ayala in excessively-tight handcuffs numerous times, only to reapply them even tighter than before despite Ms. Ayala repeatedly informing him that the handcuffs were too tight and causing her pain. Incredibly, despite Ms. Ayala's total lack of resistance, Ranger Palmer instructed Ranger Alexander to kick Ms. Ayala to widen her stance and to twist Ms. Ayala's

arm while placing her in handcuffs. Ranger Alexander told Ranger Palmer that there was no need to use force because Ms. Ayala was complying with his commands, but Ranger Palmer responded, "[w]e are arresting her, treat her as such."

5. Eventually, after Ranger Palmer finished training Ranger Alexander to use unreasonable force when (falsely) arresting a compliant suspect, the Rangers took Ms. Ayala to Marin County jail, where Ms. Ayala was incarcerated for approximately six (6) hours before having to pay $25,000 in bail. Ms. Ayala was criminally charged and forced to hire a criminal defense attorney. At Ms. Ayala's preliminary hearing, the Superior Court for Los Angeles County conclusively found that Ms. Ayala was not the person for whom the warrant was issued. The Court issued Ms. Ayala a factual finding of innocence.

6. As a result of this incident, Ms. Ayala was physically and emotionally injured, humiliated, and forced to miss work because of her injuries. Ms. Ayala was forced to spend money on bail and hiring a criminal defense attorney to represent her. The Defendant Rangers inflicted serious injuries upon Ms. Ayala that required on-going medical treatment.

## JURISDICTION

7. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. Title 28 of the United States Code § 1346(b)(1) confers jurisdiction upon this Court over civil actions on claims against the United States arising from negligent or wrongful acts or omissions of any employee of the United States government while acting within the scope of his or her employment.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and occurrences giving rise to this action occurred in the County of Marin, California, which is within the judicial district of this Court.

Case 3:26-cv-01349   Document 1   Filed 02/13/26   Page 4 of 16

# PARTIES

9. Plaintiff ARACELI CARINA AYALA (hereinafter "Plaintiff") is a resident of the County of Alameda and a citizen of the United States of America.

10. Defendant UNITED STATES OF AMERICA is, and at all times herein mentioned was, the employer of Ranger Nicolette Palmer and Ranger Chad Alexander, who were, and at all times herein mentioned are, law enforcement rangers for the Department of the Interior—National Park Service. In doing the acts/omissions alleged herein, Ranger Nicolette Palmer and Ranger Chad Alexander acted within the course and scope of their employment for Defendant UNITED STATES OF AMERICA. Defendant UNITED STATES OF AMERICA is vicariously liable for the actions of Ranger Nicolette Palmer and Ranger Chad Alexander pursuant to 28 U.S.C. §§ 1346(b)(1), 2674, and 2680(h).

11. Plaintiff is ignorant of the true names and/or capacities of the Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities when ascertained. Plaintiff believes and alleges that each of the Doe Defendants is a law enforcement officer not employed by the United States of America, who is legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each Doe Defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, battery, and false arrests. Each Doe Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint subject to further discovery.

*Ayala v. United States* – **Complaint for Damages**
- 4 -

12. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

## ADMINISTRATIVE PREREQUISITES

13. On July 22, 2025, Plaintiff presented her Federal Tort Claim on an executed Standard Form 95 to the Department of Interior within the statute of limitations. Plaintiff received no response from the Department after six months, so Plaintiff's administrative claim has been denied by operation of law as of January 22, 2026, pursuant to 28 U.S.C. § 2675(a).

## FACTUAL ALLEGATIONS

14. On July 18, 2024, in the early evening, Plaintiff Araceli Carina Ayala ("Plaintiff") was driving through the Golden Gate National Recreation Area in Marin County, California, with her friend, Carmen Jovel, who was a passenger in Plaintiff's vehicle. In the Marin Headlands area, just north of the Golden Gate Bridge, Plaintiff was pulled over by two (2) National Park Service law enforcement Rangers: Ranger Nicolette Palmer ("Ranger Palmer") and Ranger Chad Alexander ("Ranger Alexander") (collectively, "Rangers Palmer and Alexander" or "the Rangers"). Ranger Palmer was training Ranger Alexander.

15. Rangers Palmer and Alexander exited their patrol vehicle and approached Plaintiff's vehicle with their hands on their pistols. The Rangers knocked on the rear window of Plaintiff's vehicle with a metal object and commanded Plaintiff to roll all of her windows down. Plaintiff's front driver's side and passenger's side windows were already rolled down. Plaintiff was unable to roll her rear windows down and asked the Rangers to come to the front windows to communicate with her. After her request, Ranger Palmer began acting in a hostile manner toward Plaintiff.

16. Ranger Palmer told Plaintiff that Plaintiff was being stopped because her registration tags were expired. Plaintiff clarified that her registration tags were stolen off her license plate, but her registration was paid and current. Plaintiff further explained that the DMV had not yet mailed her new replacement tags because Plaintiff had unpaid bridge toll fees that she was in the process of paying. Plaintiff corroborated her statement by showing the Rangers official DMV paperwork showing that her registration payments were indeed up to date, that her registration was current, and that delivery of her replacement tags was contingent on final payment of her outstanding bridge toll fees.

17. Plaintiff informed the Rangers that her California driver's license was in her bag in the back seat of her car. Plaintiff asked the Rangers if she could reach for her bag in order to provide the Rangers with her driver's license. The Rangers responded, "Absolutely not!" and returned to their patrol vehicle to talk amongst themselves. On information and belief, the Rangers ran a check on Plaintiff's registration and confirmed that it was current and up to date.

18. The Rangers returned to Plaintiff's vehicle and asked Plaintiff where she was coming from and where she lived. Plaintiff provided the Rangers with her personal information and answered the Rangers' questions. Plaintiff provided the Rangers with her full legal name, including her middle name and date of birth.

19. At this point, the Rangers no longer had reasonable suspicion that Plaintiff had committed or was committing any crime. The Rangers stopped Plaintiff for a suspected traffic infraction—out of date registration—but Plaintiff showed the Rangers official paperwork conclusively showing her registration was up to date. Additionally, the Rangers could see, via the computer in their patrol vehicle, that Plaintiff's registration was up to date. Yet the Rangers returned to their vehicle again to run a warrant check on Plaintiff. The Rangers extended the

traffic stop beyond the time reasonably required to address the initial traffic infraction, and after the initial traffic infraction was resolved, even though the Rangers did not have reasonable suspicion nor probable cause that Plaintiff had committed or was committing any crime.

20. The Rangers eventually returned to Plaintiff's vehicle and informed Plaintiff that they found an outstanding warrant for someone with the same first and last name as Plaintiff, "Araceli Ayala," in Lancaster, California, which is nearly 400 miles away from where the Rangers were currently detaining Plaintiff. The Rangers ordered Plaintiff out of her vehicle and detained Plaintiff in the back of their patrol vehicle for an extended period of time while the Rangers waited to allegedly "confirm" the warrant.

21. Plaintiff later learned that no other descriptive information or biometric identifiers on the warrant matched Plaintiff other than her first and last name: on information and belief, Plaintiff and the subject of the warrant had a different date of birth, middle name, height, weight, address, and driver's license number. On information and belief, the outstanding warrant contained a picture of the subject of the warrant that did not resemble Plaintiff.

22. Despite the glaring discrepancies between Plaintiff and the true subject of the warrant, and without taking simple, readily available steps to verify whether Plaintiff was the true subject of the warrant, the Rangers "confirmed" that Plaintiff was the subject of the warrant.

23. The Rangers ordered Plaintiff to tell them where her driver's license was located. Plaintiff again told the Rangers that her driver's license was in her bag on the back seat of her car. Plaintiff requested that the Rangers handle her backpack with care because it contained expensive work equipment, including her laptop and headphones. The Rangers took Plaintiff's

driver's license out of her backpack, threw her backpack onto the ground, and told Plaintiff she was under arrest. On information and belief, the Rangers looked at Plaintiff's driver's license and saw that Plaintiff's personal information did not match the information describing the subject contained in the outstanding warrant yet elected to arrest Plaintiff anyway.

24. Ranger Palmer ordered Plaintiff out of the patrol vehicle and told Plaintiff to stand with her hands behind her back so that Ranger Alexander could place her in handcuffs. The Rangers also ordered Plaintiff to remove her shoes, socks, hair tie, and jewelry while standing on the side of the road. Plaintiff complied and followed the Ranger's instructions. Ranger Alexander was in training and appeared unaware of how to properly handcuff a suspect. Ranger Alexander struggled, taking approximately six or seven attempts to place the handcuffs on Plaintiff even though Plaintiff was not moving at all and was fully compliant. Each time Raner Alexander attempted to place the handcuffs on Plaintiff the handcuffs were excessively tight and hurt Plaintiff's wrists. Plaintiff repeatedly told the Rangers that the handcuffs were too tight and that Ranger Alexander was hurting her, but on each attempt, Ranger Alexander continued to excessively tighten Plaintiff's handcuffs. The multiple, excessively-tight applications of handcuffs caused Plaintiff pain, bruising, and swelling.

25. Once Plaintiff was secured in handcuffs, the Rangers began to search Plaintiff's person. Even though Ranger Palmer was a female officer on the scene, and Plaintiff is a female who readily presents as such, Ranger Alexander, a male officer, conducted the pat down search of Plaintiff. During the search, Ranger Alexander aggressively grabbed Plaintiff's body—including her breasts and vagina. Plaintiff's friend, Carmen Jovel, witnessed Ranger Alexander aggressively grabbing Plaintiff's body during the search. Jovel asked the Rangers if Ranger Palmer could instead conduct the search because she was a female officer. Ranger Palmer

refused and instructed Ranger Alexander to finish searching Plaintiff.

26. Incredibly, Ranger Palmer then told Ranger Alexander that Ranger Alexander was not using enough force while conducting the search and told Ranger Alexander to use force to widen Plaintiff's stance instead of simply commanding Plaintiff to widen her stance. Ranger Alexander asked Ranger Palmer why he needed to use force because Plaintiff had complied with every command he had given thus far. Ranger Palmer told Ranger Alexander that, "[w]e are arresting her, treat her as such." Plaintiff was fully compliant with the Rangers throughout this incident and followed all the Ranger's commands, as acknowledged by Ranger Alexander, yet Ranger Alexander followed Ranger Palmer's instruction to use more force. Ranger Alexander kicked Plaintiff's right heel while simultaneously pulling downward on Plaintiff's handcuffs, causing pain and injury to Plaintiff's shoulder and leg.

27. The Rangers secured Plaintiff in overly-tight handcuffs and placed Plaintiff in the back of their patrol vehicle. Plaintiff again told the Rangers that her handcuffs were too tight and hurting her wrists. The Rangers took Plaintiff back out of their patrol vehicle and Ranger Alexander began to adjust Plaintiff's handcuffs again. Ranger Palmer told Ranger Alexander to twist Plaintiff's right shoulder to get the handcuffs on correctly. Ranger Alexander twisted Plaintiff's right shoulder. Plaintiff felt a pop in her right shoulder and Ranger Alexander tightened Plaintiff's handcuffs even tighter than they had been before. The Rangers then placed Plaintiff back into their patrol vehicle, searched Plaintiff's entire vehicle, and impounded her vehicle. Eventually, the Rangers took Plaintiff to Marin County Jail.

28. Once at booking in Marin County Jail, Plaintiff discovered that the outstanding warrant was for a charge of domestic violence against a spouse. At the time of this incident, Plaintiff was not married and had never been married. Plaintiff asked Ranger Palmer about the

process of going into jail because she had never been incarcerated before. Ranger Palmer told Plaintiff, "[y]ou have never been to jail before? **I didn't think so**" and informed Plaintiff that she would go into a room and sit on a bench until she was ready to be admitted into the jail, at which point her handcuffs would be removed. Plaintiff spent approximately five (5) to six (6) hours in jail before paying her $25,000 bail.

29. Plaintiff was required to retain a criminal defense attorney to represent her. On August 21, 2024, Plaintiff's defense attorney appeared before the Superior Court of Los Angeles County in Antelope Valley, California, regarding this incident. At the preliminary hearing, Plaintiff was fully exonerated of the charges against her and Hon. Judge Jerold Turner issued a factual finding of innocence. Plaintiff's criminal defense attorney informed Plaintiff that no information in the outstanding warrant describing the subject of the warrant matched Plaintiff's information other than first name and last name.

30. As a result of this incident, Plaintiff was forced to spend money on bail and hiring a criminal defense attorney. Plaintiff was physically and emotionally injured, humiliated, and missed work from the day of the incident, until the first week of September, 2024, because of her injuries. Plaintiff received, and is still receiving, medical treatment due to the injuries caused by Rangers Palmer and Alexander.

**FIRST CAUSE OF ACTION**
**(False Imprisonment / False Arrest)**
(*Against Defendants UNITED STATES OF AMERICA, & DOES 1 through 50*)

31. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

32. Ranger Palmer, Ranger Alexander, and DOES 1-50 did not have reasonable suspicion to detain plaintiff and/or probable cause to arrest Plaintiff because Plaintiff was not committing any crimes and had not committed any crimes. Plaintiff was stopped under

suspicion of having invalid registration tags. When questioned about her tags, Plaintiff explained that her tags were stolen and promptly showed the Rangers her DMV paperwork conclusively showing that Plaintiff's registration was paid and currently valid. Ranger Palmer, Ranger Alexander, and DOES 1-50 confirmed, or could have easily confirmed, that Plaintiff's registration was current and up to date via the computer in their patrol vehicle. At this point, any reasonable suspicion that Plaintiff had committed a crime or was currently committing a crime dissipated, yet Ranger Palmer, Ranger Alexander, and DOES 1-50 continued to detain Plaintiff. Ranger Palmer, Ranger Alexander, and DOES 1-50 unlawfully extended the traffic stop beyond the time reasonably required to address the initial traffic infraction, which had been resolved, to initiate a search for outstanding warrants.

33. Ranger Palmer, Ranger Alexander, and DOES 1-50 searched for, and eventually found, an outstanding warrant for an individual with the same first and last name as Plaintiff. Other than first and last name, none of the identifying or biometric information pertaining to the subject of the warrant matched Plaintiff or the information on Plaintiffs driver's license: the subject of the warrant and Plaintiff had a different date of birth, middle name, height, weight, driver's license number, and appearance. Ranger Palmer, Ranger Alexander, and DOES 1-50 had access to Plaintiff's driver's license and registration information when they "confirmed" that Plaintiff was the subject of the warrant.

34. A reasonable officer in Ranger Palmer, Ranger Alexander, and DOES 1-50's position, exercising ordinary judgment, would not have reasonably believed that Plaintiff was the true subject of the warrant because of the numerous, glaring discrepancies between Plaintiff and the subject of the warrant. Ranger Palmer, Ranger Alexander, and DOES 1-50 continued to detain Plaintiff after all suspicion dissipated, subjected Plaintiff to humiliating searches, placed

Plaintiff under arrest, and took Plaintiff to jail even though Ranger Palmer, Ranger Alexander, and DOES 1-50 knew, or reasonably should have known, that Plaintiff was not the subject of the warrant and had not committed any crimes.

35. Ranger Palmer, Ranger Alexander, and DOES 1-50 failed to exercise due care when they detained and injured Plaintiff without just cause and under false pretenses. Ranger Palmer, Ranger Alexander, and DOES 1-50 restrained, detained, and/or confined Plaintiff without her consent or a lawful basis, ultimately incarcerating Plaintiff in Marin County Jail for approximately six (6) hours.

36. As a result of Ranger Palmer, Ranger Alexander, and DOES 1-50's unlawful confinement, Plaintiff suffered emotional distress, physical injury, and financial hardship.

37. Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein was done within the scope of their employment.

38. Defendant UNITED STATES OF AMERICA is vicariously liable for the tortious conduct of its employees, Ranger Palmer and Ranger Alexander, as described herein, pursuant to 28 U.S.C. §§ 1346(b)(1), 2674, and 2680(h).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**(Battery)**
(*Against Defendants UNITED STATES OF AMERICA, & DOES 1 through 50*)

39. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

40. Without any physical provocation by Plaintiff and despite Plaintiff's full compliance with the Rangers' and DOES 1-50's commands, Ranger Palmer told Ranger Alexander to treat Plaintiff like an arrestee and use force to widen Plaintiff's stance. Following

Ranger Palmer's instruction, Ranger Alexander violently kicked Plaintiff's right heel while simultaneously pulling downward on Plaintiff's handcuffs, causing pain and injury to Plaintiff's shoulder and leg. Due to no fault of Plaintiff, Ranger Alexander applied excessively tight handcuffs approximately six or seven times, causing Plaintiff pain, bruising, and swelling. Plaintiff told Ranger Palmer, Ranger Alexander and DOES 1-50 that her handcuffs were too tight and hurting her wrists. In response, Ranger Palmer told Ranger Alexander to twist Plaintiff's right shoulder to get the handcuffs on correctly. Ranger Alexander twisted Plaintiff's right shoulder. Plaintiff felt a pop in her right shoulder and Ranger Alexander tightened Plaintiff's handcuffs even tighter than they had been before. Additionally, Ranger Alexander, a male officer, searched Plaintiff's body and aggressively grabbed Plaintiff's breasts and vagina even though Ranger Palmer was a female officer on scene and should have performed the search of Plaintiff's person. Ranger Palmer refused to conduct the search when asked.

41. Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein was intentional and meant to harm and/or offend Plaintiff.

42. Plaintiff did not consent to Ranger Palmer, Ranger Alexander, or DOES 1-50's conduct described herein.

43. Ranger Palmer aided and abetted Ranger Alexander's harmful and/or offensive touching by instructing and encouraging Ranger Alexander to kick Plaintiff, twist Plaintiff's arm, and perform an invasive search of Plaintiff's person. Ranger Palmer's instruction and encouragement was a substantial factor is causing Plaintiff's harm.

44. A reasonable person in Plaintiff's position would have been harmed and/or offended by Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein.

45. As a direct result of Ranger Palmer, Ranger Alexander, and DOES 1-50's

conduct described herein, Plaintiff was physically, emotionally, and/or financially damaged.

46. As a proximate result of Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein, Plaintiff was physically, emotionally, and/or financially damaged.

47. Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein was done within the scope of their employment.

48. Defendant UNITED STATES OF AMERICA is vicariously liable for the tortious conduct of its employees, Ranger Palmer and Ranger Alexander, as described herein, pursuant to 28 U.S.C. §§ 1346(b)(1), 2674, and 2680(h).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (Negligence)
(*Against Defendants UNITED STATES OF AMERICA, & DOES 1 through 50*)

49. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint as fully set forth.

50. Ranger Palmer, Ranger Alexander, and DOES 1-50 had a duty to:

    a. exercise reasonable care when confronting a suspect and to only use force that is reasonably necessary under the circumstances;

    b. evaluate whether reasonable suspicion exists to detain a suspect or probable cause exists to arrest a suspect;

    c. reassess the existence of reasonable suspicion and probable cause in an evolving situation as the circumstances changed;

    d. reasonably investigate whether an arrestee is the true subject of a warrant;

    e. take simple, readily available steps to verify identity when presented with significant discrepancies between an arrestee and the subject of a warrant.

51. Ranger Palmer, Ranger Alexander, and DOES 1-50 violated said duties when they:

   a. used force on a non-threatening and fully compliant suspect;

   b. detained Plaintiff in the absence of reasonable suspicion and/or continued to detain Plaintiff after all reasonable suspicion had dissipated;

   c. arrested Plaintiff without probable cause;

   d. failed to reassess the existence of reasonable suspicion or probable cause during Plaintiff's detention and arrest;

   e. failed to reasonably investigate whether Plaintiff was the true subject of the warrant; and

   f. failed to take reasonable steps to verify whether Plaintiff was the true subject of the warrant when presented with significant identifying and biometric discrepancies between Plaintiff and the true subject of the warrant.

52. Ranger Palmer, Ranger Alexander, and DOES 1-50's breach of their duty of care to Plaintiff, as described herein, was a substantial factor in causing Plaintiff's harm.

53. As a proximate and foreseeable result of Ranger Palmer, Ranger Alexander and DOES 1-50's breach of their duty of care to Plaintiff, as described herein, Plaintiff was physically, emotionally, and/or financially damaged.

54. Ranger Palmer, Ranger Alexander, and DOES 1-50's conduct described herein was done within the scope of their employment.

55. Defendant UNITED STATES OF AMERICA is vicariously liable for the tortious conduct of its employees, Ranger Palmer and Ranger Alexander, as described herein,

pursuant to 28 U.S.C. §§ 1346(b)(1), 2674, and 2680(h).

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For general damages in a sum proven at trial;
2. For special damages, including but not limited to past, present, and/or future wage loss, income, and support, medical expenses, bail fees, criminal defense fees, and other special damages in a sum to be determined according to proof;
3. For punitive damages against Defendant DOES 1-50 in a sum according to proof;
4. For reasonable attorney's fees and costs that may be allowed by state & federal law;
5. Any and all permissible statutory damages;
6. For the cost of suit herein incurred; and
7. For such other and further relief as the Court deems and proper.

Dated:  February 13, 2026       **POINTER & BUELNA, LLP**
                                **LAWYERS FOR THE PEOPLE**

*/s/ Matthew T. Norman*
ADANTÉ D. POINTER
PATRICK M. BUELNA
MATTHEW T. NORMAN
Counsel for Plaintiff,
ARACELI CARINA AYALA